IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JACQUELINE K. HURST

          v.

DISTRICT OF COLUMBIA

: 

: 

: Civil Action No. DKC 12-2537

: 

: 

: 

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination action is a motion to transfer venue or, in the alternative, to dismiss filed by Defendant, the District of Columbia ("the District"). (ECF No. 12). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be denied.

**I.  Background**

Plaintiff Jacqueline K. Hurst, a Maryland resident, was employed by the District as a youth correctional officer at a facility in Laurel, Maryland, from November 28, 2004, until her discharge on February 1, 2011. According to the amended complaint, Plaintiff experienced disparate treatment based on her race (Caucasian) on numerous occasions during the course of her employment, ultimately resulting in her termination.

This discriminatory conduct allegedly began in or around April 2007 when Plaintiff complained about disparaging racial comments made by a supervisor (African-American), but the District took no action in response. Plaintiff asserts that when "other supervisors saw that management did not take any meaningful action . . . they began to discriminate against [her] by giving her the worst assignments[] and fail[ing] to take her complaints seriously." (ECF No. 3 ¶ 6).

At some point, Plaintiff was "sexually assaulted" by a co-worker (African-American) and filed "an incident report" with her supervisor (African-American). (*Id.* at ¶ 7). When no immediate disciplinary action was taken, she complained to an assistant director. Approximately three weeks later, the offending co-worker was "removed from Plaintiff's work area," but Plaintiff was subsequently transferred to the night shift "so [the co-worker] could be returned to the day shift." (*Id.*). "Plaintiff objected to the transfer because she felt that she was being punished by being placed on the night shift . . . while her harasser was given the day shift, [but] her objection was ignored." (*Id.*). As a result of the shift change, she was placed in regular contact with the offender, whom she "was required to search [] when he left the premises" after his shifts. (*Id.*). Plaintiff lodged repeated complaints about these circumstances, but the District did not respond. When

"two [female] African-American employees filed sex discrimination charges against other employees," however, "the responsible employees were terminated," despite the fact that, unlike the assault suffered by Plaintiff, "there was no physical contact" in those cases. (*Id.* at ¶ 8).

In March 2009, Plaintiff "severely injured her knee in the course of her employment." (*Id.* at ¶ 10). She "presented paperwork and a physician's work release form" to the District and "request[ed] that her supervisor release her from work and report the injury to [the] Workers Compensation department." (*Id.* at ¶ 10). Her supervisor (African-American) declined to do so and "ordered her to return to work, against her physician's instructions." (*Id.*). After again complaining to the assistant director, Plaintiff was released from work and her claim was reported, but she "had to wait [three] months before she received her first Workers Compensation payment." (*Id.* at ¶ 11). According to Plaintiff, "African American employees who were injured at work . . . had their claims processed promptly and received their checks promptly." (*Id.*).

On or about November 9, 2009, Plaintiff "was arrested for stopping payment on a check because of a dispute over [a] transaction." (*Id.* at ¶ 2). Upon returning to work, she was called into a meeting at the Laurel correctional facility with her shift supervisor, union representatives, and a District

3

human resources representative, during which she was "placed on suspension because of the arrest." (ECF No. 13-1, Plaintiff Decl. at ¶ 4). In May 2010, she was "issued formal disciplinary documents and a suspension by . . . the Assistant Director of the Laurel [f]acility." (*Id*. at ¶ 5). Plaintiff ultimately entered a guilty plea in the Circuit Court for Baltimore County and, on June 16, 2010, received probation before judgment. On February 1, 2011, the District terminated her employment. Plaintiff asserts that the severity of this discipline was inconsistent with that imposed by the District in a number of cases involving similarly-situated African-American employees, who were not terminated following conviction of "similar[] or worse criminal offenses." (ECF No. 3 ¶ 4).

Plaintiff commenced this action in the Circuit Court for Prince George's County, Maryland, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and Md. Code Ann., State Gov't §§ 20-601 *et seq.* (ECF No. 2).[1] She subsequently

_____

[1] Presumably, Plaintiff intended to cite Md. Code Ann., State Gov't § 20-1202, which was created by the 2009 recodification of former Article 49B, § 42(a). *See Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 610 n. 2 (2010). Section 20-601 *et seq.* of the State Government Article was the result of the recodification of Article 49B, § 16, which "does not . . . create a private right of action in tort." *Childers v. Chesapeake and Potomac Telephone Co.*, 881 F.2d 1259, 1265 (4th Cir. 1989). Former Article 49B, § 42, however, "provides a private cause of action in Montgomery, Prince

filed an amended complaint raising the same claims.   (ECF No.
3).   The District timely removed to this court (ECF No. 1) and,
on September 24, 2012, filed the pending motion to transfer
venue or, in the alternative, to dismiss (ECF No. 12).
Plaintiff has opposed this motion (ECF No. 13) and the District
has filed papers in reply (ECF No. 14).

## II.   Motion to Transfer Venue

Motions to transfer venue are governed by 28 U.S.C. §
1404(a), which provides, in relevant part, that "[f]or the
convenience of parties and witnesses, in the interest of
justice, a district court may transfer any civil action to any
other district or division where it might have been brought[.]"
As the plain language of the statute suggests, the threshold
inquiry in the analysis of a § 1404(a) motion is whether the

---

George's, and Howard counties." *Bean v. United Parcel Service*,
No. DKC 2004-2213, 2005 WL 1995442, at *3 n. 3 (D.Md. Aug. 17,
2005).

In its reply papers, the District argues, for the first
time, that Plaintiff's amended complaint is subject to dismissal
due to its failure to cite the proper provision of the State
Government Article.   "The ordinary rule in federal courts is
that an argument raised for the first time in a reply brief or
memorandum will not be considered." *Clawson v. FedEx Ground
Package Sys., Inc.*, 451 F.Supp.2d 731, 734 (D.Md. 2006).   Given
that the discriminatory acts about which Plaintiff complains
occurred in Prince George's County, the court construes her
state law cause of action as brought pursuant to State Gov't §
20-1202.

action could have been brought in the alternative forum.[2]  Once that is established, courts generally consider four factors: "(1) the weight accorded the plaintiff's choice of venue, (2) witness convenience and access, (3) convenience of the parties, and (4) the interest of justice." *Lynch v. Vanderhoef Builders*, 237 F.Supp.2d 615, 617 (D.Md. 2002).

The moving party bears the burden of showing that a transfer to another forum is proper.  "In order to satisfy this burden, the defendant should submit affidavits from witnesses and parties involved that explain the inconvenience and hardship [it] 'would suffer if the case were heard in the plaintiff's chosen forum.'"  *CoStar Realty Information, Inc. v. Meissner*, 604 F.Supp.2d 757, 770 (D.Md. 2009) (quoting *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D.Md. 2002)).  "Mere assertions of inconvenience or hardship, without more, are insufficient to sustain a motion . . . to transfer pursuant to § 1404(a)." *Id.* (citing *Dow*, 232 F.Supp.2d at 499; *Helsel v. Tishman Realty & Constr. Co., Inc.*, 198 F.Supp.2d 710, 712 (D.Md. 2002)).  Ultimately, "[t]he decision whether to transfer venue is

---

[2]  Here, it is undisputed that venue would be proper in either Maryland or the District of Columbia.  The specific venue provision set forth in Title VII recites, in relevant portion, that "an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [or] in the judicial district in which the employment records relevant to such practice are maintained and administered[.]"  42 U.S.C. § 2000e-5(f)(3).

committed to the sound discretion of the trial court." *Mamani v. Bustamante*, 547 F.Supp.2d 465, 469 (D.Md. 2008) (citing *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991)).

The District cannot carry its burden on the instant motion because it has not submitted any evidence demonstrating that it would be inconvenienced by litigation in this court.  Plaintiff, on the other hand, has provided a declaration showing that (1) she is a Maryland resident; (2) the discriminatory conduct occurred largely, if not exclusively, in this district; (3) she was suspended after meeting with representatives of the District at her job site in Laurel; and (4) at least two of the comparators identified in the amended complaint are Maryland residents.

Even if the District had submitted supporting evidence, the application of the relevant factors would militate heavily in favor of proceeding in this court.  Where a plaintiff sues in her home forum, her choice of venue is "ordinarily accorded considerable weight." *Lynch*, 237 F.Supp.2d at 617.  "[T]hat weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy," *id.*, but that is clearly not the case here. Indeed, Plaintiff resides in Maryland, *see Mamani*, 547 F.Supp.2d

at 469 ("unless the balance of factors 'is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" (quoting *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)), and her former place of employment, where she experienced the disparate treatment about which she complains, was the District's correctional facility in Laurel. While it may be true, as the District asserts in its motion papers, that relevant decisions were made by officials located in Washington, D.C., the burden that might be placed on those officials in traveling to this court – *i.e.*, approximately fifteen miles away – is not substantial. Moreover, most of the relevant witnesses work, if not reside, in Maryland, and litigation in this district would not pose a significant inconvenience to them. Considering also that the District of Maryland represents a relatively convenient forum for both parties and that no compelling interest of justice would be served by a transfer, the District's motion to transfer will be denied.

**III. Motion to Dismiss**

    **A.    Standard of Review**

The District alternatively moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d

480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, the court need not accept unsupported legal allegations. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1979).  Nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v.*

*Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

   **B.  Analysis**

   In support of its motion to dismiss, the District initially contends that the "standard of proof for claims of discrimination" is heightened "when claims of racial discrimination are made by a majority-group plaintiff (reverse discrimination), as opposed to a minority-group plaintiff (traditional discrimination)."  (ECF No. 12, at 4).  It alleges that Plaintiff's amended complaint "fails" under this "elevated standard" because it "does not refute that plaintiff was arrested and was convicted, and as a punishment, was placed on probation," which "permits termination of plaintiff notwithstanding her race or color."  (*Id.* at 5).  The District further contends that, insofar as Plaintiff seeks unliquidated damages, she was "required to comply with the mandatory notice provision set forth in D.C. Code § 12-309," which "imposes a

notice requirement on everyone with a tort claim against the District of Columbia." (*Id*. at 5-6). Citing an attached declaration, the District argues that Plaintiff has not satisfied this requirement, and that, as a result, it is "entitled to judgment as a matter of law on Plaintiff's state law claim." (*Id*. at 6). Finally, the District argues, somewhat confusingly, that it cannot be liable for punitive damages because "District of Columbia law does not allow punitive damages for negligence claims." (*Id*. at 6).

These arguments, which largely ignore the standard of review applicable to a Rule 12(b)(6) motion, may be dispensed with in short order. The District's suggestion that a heightened pleading requirement exists for Title VII claims of reverse discrimination relies on cases decided by the United States Court of Appeals for the District of Columbia. *See Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993); *Parker v. Baltimore & Ohio R.R.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981). The D.C. Circuit is among "[s]everal Courts of Appeal" holding that "to make a prima facie case [under Title VII] a white plaintiff must show 'background circumstances' which indicate that the defendant is 'that unusual employer who discriminates against the majority.'" *Mosca v. Cole*, 384 F.Supp.2d 757, 764 (D.N.J. 2006) (quoting *Parker*, 652 F.2d at 1017). The Fourth Circuit, however, is not. *See Betof v. Suburban Hosp., Inc.*,

No. DKC 11-1452, 2012 WL 2564781, at *8 n. 11 (D.Md. June 29, 2012) ("The United States Court of Appeals for the Fourth Circuit has expressly declined to decide whether a plaintiff in a reverse discrimination suit must produce additional evidence, beyond the traditional *prima facie* requirements, to establish race discrimination."). Moreover, *Harding* and *Parker* require this heightened showing to establish a *prima facie* case under the *McDonnell Douglas* framework, but "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Thus, these cases do not support the District's argument for dismissal.

The District's second argument – *i.e.*, that Plaintiff did not provide notice of her claim pursuant to D.C. Code § 12-309 – is also an insufficient ground for dismissal. Section 12-309 provides that "[a]n action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant . . . has given notice in writing to the Mayor of the District of Columbia of the appropriate time, place, cause, and circumstances of the injury or damage." This requirement "is a prerequisite to a suit against the District of Columbia 'because it represents a waiver of sovereign immunity.'" *Blocker-Burnette v. District of Columbia*, 730

F.Supp.2d 200, 203 (D.D.C. 2010) (quoting *Faison v. District of Columbia*, 664 F.Supp.2d 59, 68 (D.D.C. 2009)). "[T]he § 12-309 notice requirement is not jurisdictional," *R. v. District of Columbia*, 370 F.Supp.2d 267, 270 (D.D.C. 2005) (quoting *Dellums v. Powell*, 566 F.2d 216, 229 (D.C. Cir. 1977) (internal marks omitted)); thus, satisfaction need not be specifically pleaded.

The District's claim in this regard relies on the declaration of Tamonica Heard, a staff assistant in the D.C. office of risk management, which recites that the District "has received no claims notice" from Plaintiff or her attorney. (ECF No. 12, Heard Decl. at ¶ 4). "Ordinarily, a court 'is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss.'" *Sager v. Housing Comm'n of Anne Arundel County*, 855 F.Supp.2d 524, 542 (D.Md. 2012) (quoting *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007)). While § 12-309 may ultimately limit Plaintiff's recovery in certain respects, "[c]laims such as back pay are easily ascertainable and thus qualify as liquidated damages" for which notice is not required. *Elzeneiny v. District of Columbia*, 699 F.Supp.2d 31, 34 (D.D.C. 2010). Based on the limited record at this early stage of the litigation, dismissal is not appropriate.

Finally, the District argues that "District of Columbia law does not allow punitive damages for negligence claims." (ECF

No. 12, at 6).   This case, however, involves neither a claim of negligence nor a claim under District of Columbia law.   Under Title VII, punitive damages are available where "the complaining party demonstrates that the respondent engaged in . . . discriminatory practices with malice or with reckless indifference to . . . federally protected rights."   42 U.S.C. § 1981A(b)(1).   Whether the evidence will ultimately support such a finding remains to be seen, but Plaintiff may attempt to develop her claim in this regard through discovery.

## IV.   Conclusion

For the foregoing reasons, the District's motion to transfer or, in the alternative, to dismiss will be denied.   A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge