**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

JACQUELINE K. HURST,                          *

      Plaintiff,                                      *

v.                                                           *

                                                          **Civil Case No.: PWG-12-2537**

DISTRICT OF COLUMBIA,                        *

      Defendant.                                  *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Jacqueline K. Hurst, who is Caucasian, worked at the District of Columbia Department of Youth Rehabilitation Services ("DYRS") as a youth correctional officer from November 28, 2004 until February 1, 2011, when DYRS discharged her because a state court found her guilty of the felony of "stopping payment on a check," but deferred entry of judgment to sentence her to probation before judgment.  Am. Compl. ¶¶ 1–3, ECF No. 3; Notice of Final Decision 3, Def.'s Mem. Ex. 7, ECF No. 52-6.  In response, Plaintiff filed a two-count complaint for racial discrimination in violation of the Maryland Fair Employment Practices Act ("Maryland FEPA"), Md. Code Ann., State Gov't § 20-1202,[1] and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, alleging that "similarly situated African American Youth Correctional Officers were not terminated for similar, or worse disciplinary infractions." Am. Compl. ¶¶ 16, 20.  Defendant moves for summary judgment, arguing that "Plaintiff cannot

---

[1] *See Hurst v. District of Columbia*, No. DKC-12-2537, 2012 WL 5409740, at *2 (D. Md. 2012) (presuming that Plaintiff, who cites State Gov't § 20-601, "intended to cite Md. Code Ann., State Gov't § 20–1202," under which a private cause of action exists, as "Section 20–601 *et seq.* . . . 'does not ... create a private right of action in tort'" (quoting *Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259, 1265 (4th Cir. 1989))).

establish a prima facie case for disparate discipline because she does not have any similarly situated comparators," and that, even if she could, she cannot prove discrimination "because the decision maker had a legitimate non-discriminatory reason for terminating Plaintiff."  Def.'s Mot. 2, ECF No. 52.[2]  Because Plaintiffs fails to establish a *prima facie* case under either the Maryland or federal statute, I will grant Defendant's motion.

## I.   BACKGROUND[3]

As a youth correctional officer, Plaintiff "'[p]rovide[d] for the day-to-day direct supervision and positive engagement of youth in the . . . care and custody" of DYRS, a program "to improve public safety and provide court-involved youth the opportunity to become more productive citizens by building on the strengths of youth and their families in the least restrictive, most home-like environment consistent with public safety."  Position Description 1, Def.'s Mem. Ex. 1, ECF No. 52-1.  Importantly, she also "[s]erved as a role model."  *Id.*

D.C. Human Resources ("DCHR") periodically performed background checks on DYRS employees, including Plaintiff, pursuant to the Child and Youth, Safety and Health Omnibus

---

[2] The parties fully briefed this motion. ECF Nos. 52, 65, 69. A hearing is unnecessary.  *See* Loc. R. 105.6.  Defendant argues that Hurst's "additional claims of discrimination" and "sexual harassment claim under Title VII" are procedurally barred, Def.'s Mot. 2–3, but Plaintiff clarifies that her only claims are for racial discrimination based on her termination, Pl.'s Opp'n 3.  Insofar as Plaintiff refers to a "hostile work environment claim" and a "claim under 42 U.S.C. § 1981," *see* Pl.'s Opp'n 3, I note that Plaintiff's Amended Complaint does not include a count for hostile work environment or a § 1981 claim, and a responsive brief is not the proper means to amend a complaint. *See Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 480 (D. Md. 2005) ("[A party] 'is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint.'") (quoting *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997))).

[3] In reviewing the evidence related to a motion for summary judgment, the Court considers the facts in the light most favorable to the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009); *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 391–92 (4th Cir. 2009); *Dean v. Martinez*, 336 F. Supp. 2d 477, 480 (D. Md. 2004).  Here, unless otherwise stated, undisputed facts comprise the background. Where a dispute exists, I consider the facts in the light most favorable to Plaintiff.  *See Ricci*, 557 U.S. at 585–86; *George & Co.*, 575 F.3d at 391–92; *Dean*, 336 F. Supp. 2d at 480.

Amendment Act of 2004 ("CYSHA"), which "was implemented to ensure that . . . employees . . . that work directly with children and youth are suitable . . . ."   DCHR Frequently Asked Questions 1, Def.'s Mem. Ex. 3, ECF No. 52-2; *see* Ohler Decl. ¶ 3, Def.'s Mem. Ex. 2, ECF No. 54-1.   Since 2008, the procedure has been that the DCHR Compliance Division meets with the employee if the background check raises an issue and, if the issue cannot be resolved, "DCHR sends an advance notice of removal and supporting documents to DYRS instructing the agency to begin the removal process for the employee."   Ohler Decl. ¶ 3.   The employee can request administrative review of the proposed termination by a "Hearing Officer," who is a DYRS employee, "but the Deciding Official, who ultimately decides whether to accept the Hearing Officer's recommendation, is a DCHR employee."   *Id.*; *see* Notice of Final Decision 1 ("6 DCMR § 419.8 . . . states: 'When the DCHR . . . resolve[s] criminal background check information issues, the DCHR . . . shall make the final suitability determination whether: (d) a current employee shall be retained or employment shall be terminated.'").

Hurst was arrested on November 9, 2009 for theft of an item with a value less than $500 and two "bad check charges," one for presenting a check under $500 but having insufficient funds to cover it, and one for stopping payment on a check for over $500.   Email & Arrest Report, Def.'s Mem. Ex. 4, ECF No. 52-3. The first two charges were *nolle prossed*, but Plaintiff was found guilty of the felonious conduct underlying the bad check over $500 charge and received probation before judgment on June 16, 2010.   Notice of Proposed Adverse Action 1 & Sept. 30, 2010 Mem. on Suitability 1–2, Def.'s Mem. Ex. 5, ECF No. 52-4.   DYRS notified DCHR, and DCHR issued a Notice of Proposed Adverse Action on October 5, 2010, recommending Plaintiff's removal.   *Id.*; Email & Arrest Report.

Plaintiff filed a response, Hr'g Officer Findings 2, Pl.'s Opp'n Ex. 5, ECF No. 66-3, and DYRS notified DCHR that its "Hearing Officer conclude[d] that the evidence, along with the analysis of the seven factors of suitability . . . do not support the Notice of Proposed Adverse Action," and "recommend[ed] that the proposed adverse action . . . be withdrawn and Ms. Hurst returned to active duty." Def.'s Mem. Ex. 6, ECF No. 52-5.   Notwithstanding this recommendation, Camille Stillwell, Associate Director and Deciding Official of DCHR, issued a Notice of Final Decision to Plaintiff on January 18, 2011.   Notice of Final Decision 1. According to Stillwell, Plaintiff's "position . . . required [her] to demonstrate sound judgment . . . and truthfully and accurately document incidents and prepare detailed written reports," as well as "provide direct services to children and youth who are troubled and at-risk" and "serve as a role model to these youth."   *Id.* at 1, 6.   Stillwell stated that "[t]he government . . . has a right to expect that those employees entrusted with care and safety of vulnerable children and youth not be guilty of serious transgressions of the law, especially when those transgressions involve questions of dishonesty."   *Id.* at 7. She observed that, although Plaintiff pled not guilty and received probation before judgment, "the Court made a finding that the Employee was guilty of the offense," which was a felony.   *Id.* at 3, 6.   She also noted that it was a "very recent case."   *Id.* at 6.   Stillwell concluded that Plaintiff was "not a fit role model" and "lack[ed] the sound judgment, honesty and truthfulness required for her position."   *Id.* at 3.   Accordingly, Plaintiff was discharged.

## II.   STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or

other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). A "genuine" dispute of material fact is one where the conflicting evidence creates "fair doubt"; wholly speculative assertions do not create "fair doubt." *Cox v. Cnty. of Prince William*, 249 F.3d 295, 299 (4th Cir. 2001); *see also Miskin, v. Baxter Healthcare Corp.*, 197 F. Supp. 2d 669, 671 (D. Md. 1999). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## III.   DISCUSSION

### A.  Elements of *Prima Facie* Case

To succeed on a Title VII or Maryland state law claim[4] of racial discrimination "in the enforcement of employee disciplinary measures," a plaintiff must show:

---

[4] The state and federal claims are considered together because "[t]he Maryland Court of Appeals has deemed [Maryland] FEPA to be the state law analogue of Title VII, and has noted that Maryland courts 'traditionally seek guidance from federal cases in interpreting Maryland's [FEPA].'" *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC*, No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md. Sept. 28, 2011) (stating that the Court would "apply federal standards to both sets of claims") (quoting *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)); *see Williams v. Silver Spring Volunteer Fire Dep't*, No. GJH-13-2514, ---- F. Supp. 2d ----, 2015 WL 237146, at *5 n.1 (D. Md. Jan. 16, 2015) ("[Maryland] FEPA is the state law analogue of Title VII and its interpretation is guided by federal cases interpreting Title VII."). The parties agree that federal law generally applies to Maryland FEPA claims. *See* Def.'s Mem. 6 n.1; Pl.'s Opp'n 2 , 8 n.9.

> (1) that [s]he is a member of the class protected by Title VII [or Maryland FEPA], (2) that the prohibited conduct in which [s]he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against [her] were more severe than those enforced against those other employees.

*Cook v. CSX Trans. Co.*, 988 F.2d 507, 511 (4th Cir. 1993) (Title VII).  To do so, the plaintiff must identify an employee (or employees) outside her protected class as a "comparator" and "'demonstrate that the comparator was "similarly situated" in all relevant respects.'"  *Williams v. Silver Spring Volunteer Fire Dep't*, No. GJH-13-2514, ---- F. Supp. 2d ----, 2015 WL 237146, at *16 (D. Md. Jan. 16, 2015) (quoting *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 (D. Md. 2013), *aff'd*, No. 13-1777, 2014 WL 2809027 (4th Cir. June 23, 2014)). This means that the plaintiff must show clearly that "'the employees "dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."'"  *Id.* (quoting *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citation omitted)).

Notably, "the purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or *decision-making personnel . . . .*" *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir.2007) (emphasis added) (quoted in *Williams*).  Thus, "[i]f different decision-makers are involved, employees are generally not similarly situated." *Forrest v. Transit Mgmt. of Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007).  Indeed, "'[t]o be similarly situated the employees must have been disciplined by the same supervisor.'"  *Jones v. Giant of Md., LLC*, No. DKC-08-304, 2010 WL 3677017, at *8 (D. Md. Sept. 17, 2010) (quoting *McDougal–Wilson v. Goodyear Tire and Rubber Co*., 427 F. Supp. 2d 595, 610 (E.D.N.C. 2006)).

If the plaintiff establishes a *prima facie* case, then "the burden of going forward shifts to the employer, who must articulate a non-discriminatory reason for the difference in disciplinary enforcement." *Cook*, 988 F.2d at 511.  If the employer does so, the burden shifts once again and the plaintiff must "demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination." *Id.*  The discrimination must be intentional.  *Id.*

### B.  Whether Comparators Are Similarly Situated

Defendant challenges Plaintiff's ability to establish a *prima facie* case by arguing that none of the comparators Plaintiff identifies was similarly situated. Def.'s Mem. 7.  According to Defendant, seven of Plaintiff's comparators are dissimilar because they were not arrested while employed by DYRS, and six others are dissimilar because DYRS, and not DCHR, or at least someone other than Stillwell at DCHR, made their disciplinary decisions.  *Id.*  Plaintiff concedes that "the Fourth Circuit has generally upheld the 'same supervisor' requirement in the context of a Title VII action," *see* Pl.'s Opp'n 8, and she does not contest the dissimilitude of six of the comparators who were not arrested while employed by DYRS, *id.* at 8–15.  Rather, she focuses her argument on the timing of the seventh comparator's prior arrest and the applicability of the "same supervisor" rule under Maryland case law.  *See id.*

Instead of demonstrating that any of these comparators had the same supervisor that she had, Plaintiff argues that "the Maryland Court of Appeals, interpreting the same statute, is not as demanding." *Id.* at 8.  Yet, it is the precedent of the Fourth Circuit, as summarized above, and not the Maryland Court of Appeals, that binds this Court with regard to Plaintiff's Title VII claim.  Consequently, without showing that the comparators had the same supervisor, Plaintiff has failed to show that they were similarly situated.  *See Forrest*, 245 F. App'x at 257; *Jones*, 2010 WL 3677017, at *8.

Regarding Plaintiff's Maryland FEPA claim, it is true that the Maryland Court of Appeals has stated that "one who alleges discrimination need not identify and reconcile every distinguishing characteristic of the comparators," and has noted that evidence of discrimination by other supervisors may be relevant, "depend[ing] on 'many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)). And the Third Circuit, which the *Taylor* Court quoted, has stated that "there can be no *per se* rule that comparator evidence from employees with different supervisors is irrelevant." *Opsatnik v. Norfolk So. Corp.*, 335 F. App'x 220 (3d Cir. 2009).

Here, as noted, Plaintiff has not shown that any of the proposed comparators had the same supervisor or that the disciplinary decisions concerning them were made by DCHR Associate Director Stillwell, who decided to terminate Plaintiff.  Indeed, Defendant asserts, and Plaintiff does not deny, that supervisors at DYRS, not at DCHR, a separate agency, "made the decision to retain" three of the employees Plaintiff identifies as comparators.  Def.'s Mem. 9, 11–12.  And, Plaintiff notes that, with regard to another proposed comparator who was convicted of disorderly conduct and a drug charge, "*DYRS* decided to retain him in his position."  Pl.'s Opp'n 15 (emphasis added).   Significantly, DYRS also recommended *against* terminating Plaintiff.  Hr'g Officer Findings 4 (recommending that "Ms. Hurst be returned to active duty").  Thus, even if Maryland's same supervisor requirement is more lenient than under federal law, employees for whom DYRS, and not DCHR, made the decision to impose or withhold disciplinary action, are not appropriate comparators because the evidence is not relevant to Plaintiff's circumstances and would not lead a reasonable jury to infer discrimination, as DYRS treated Plaintiff the same.  *See Taylor*, 33 A.3d at 447 n.2, 459 ("Comparator evidence refers to

evidence that a 'similarly situated' individual with 'sufficient commonalities on the key variable between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination.'" (citation omitted)).

Moreover, a review of the circumstances of the eight comparators whom Plaintiff identifies in her Opposition as similarly situated, Employees 5–11 and 13,[5] reveals that a reasonable jury could not find that any of them was similarly situated to Plaintiff. The record before me clearly shows that half of these employees – 5, 6, 7, and 13 – were not found guilty of a felony, whereas in Plaintiff's case the court found that her conduct established her culpability of the felony with which she was charged, but deferred imposition of a judgment of guilt, imposing probation instead. The other four comparators were considered for disciplinary action four or more years before Plaintiff. To illustrate the dissimilitude of each comparator, I will address each in turn.

Employee 5 was arrested in 2007, but not terminated, Ohler Mem. ¶ 4, whereas Plaintiff was terminated after her arrest and the subsequent finding that she had committed the conduct with which she had been charged. Ultimately, based on other misconduct, Employee 5 was terminated; prior to termination, Employee 5 "was placed on leave, *with* pay . . . , pending the outcome of the Hearing Officer's recommendations," while Plaintiff "was placed on leave *without* pay after Defendant became aware of the charges against her, even though she had not been convicted." Pl.'s Opp'n 10 (emphasis added); *see* DYRS Apr. 20, 2011 Advanced Written Notice of Proposed Removal & DYRS Dec. 23, 2011 Notice of Final Decision on Proposed Removal, Pl.'s Opp'n Ex. 9, ECF No. 66-7. Thus, Plaintiff may have shown that "the

---

[5] For convenience, I use the numerical designations Plaintiff assigned to the employees to keep their identities confidential.

disciplinary measures enforced against [her] were more severe than those enforced against" Employee 5 in two instances. *See Cook v. CSX Trans. Co.*, 988 F.2d 507, 511 (4th Cir. 1993).

Plaintiff has not shown, however, that Employee 5 engaged in conduct that "was comparable in seriousness to [Plaintiff's] misconduct." *Id.* Rather, Employee 5 was arrested for a traffic violation, Ohler Mem. ¶ 4, and, at the time she was placed on leave, Employee 5 was under review by DYRS for failure to follow agency protocol and policy, insubordination and other improper behavior at work. DYRS Apr. 20, 2011 Advanced Written Notice of Proposed Removal. In contrast, Plaintiff was placed on leave because she was arrested for a felony, a far more severe offense. Arrest Report, Def.'s Mem. Ex. 4, ECF No. 52-3. Indeed, according to the Memorandum on Suitability that DCHR considered in determining whether to order Plaintiff's removal, "DCHR reviewed the relevant records and determined that the Baltimore County charge was a felony in the State of Maryland" and "DCHR recommended that DYRS institute an Enforced Leave action . . . against Ms. Hurst, pending resolution of the criminal case in Baltimore County." Sept. 30, 2010 Mem. on Suitability 1. Additionally, Plaintiff was terminated because she was not only arrested but also found guilty of the underlying felonious conduct (although the court deferred the imposition of a judgment of conviction). Notice of Final Decision 3, 6. Thus, Employee 5 did not "'engage[] in the same conduct without such differentiating or mitigating circumstances that would distinguish [his] conduct or the employer's treatment of [him] for it.'" *See Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citation omitted); *Williams v. Silver Spring Volunteer Fire Dep't*, No. GJH-13-2514, ---- F. Supp. 2d ----, 2015 WL 237146, at *16 (D. Md. Jan. 16, 2015).

Similarly, Employee 13 faced discipline for work offenses, not criminal offenses. Indeed, Employee 13 had a long history of disciplinary actions at work, largely based on her

failure to follow protocol, unprofessional behavior at work, and attendance records.  *See* DYRS

Apr. 30, 2006 & May 24, 2006 Mem., Pl.'s Opp'n Ex. 13, ECF No. 66-9; DYRS Mar. 12, 2008

Counseling Notice, Pl.'s Opp'n Ex. 14, ECF No. 66-10; DYRS Dec. 23, 2009 Mem. & Sept. 16,

2009 Ltr., Pl.'s Opp'n Ex. 19, ECF No. 66-15; DYRS Mar. 24, 2010 Ltr., Pl.'s Opp'n Ex. 20,

ECF No. 66-16; DYRS Apr. 19, 2012 Final Notice of Suspension, Pl.'s Opp'n Ex. 21, ECF No.

66-17.   DYRS counseled her, suspended her, ordered that her name remain on the Child

Protection Registry for abuse and neglect based on a Child & Family Services Agency Office of

Fair Hearings ("CFSA – OFH") Decision and Order, and reassigned her to a different position,

but she was not terminated.  *See* DYRS Mar. 12, 2008 Counseling Notice; DYRS Apr. 19, 2012

Final Notice of Suspension; CFSA – OFH Order, Pl.'s Opp'n Ex. 16, ECF No. 66-12; DYRS

May 16, 2009 Mem., Pl.'s Opp'n Ex. 17, ECF No. 66-13. Yet, despite Employee 13's apparent

poor performance as a DYRS employee and the child abuse and neglect findings, there is no

evidence on the record before me that she ever was found guilty of a felony or even arrested.  *See*

Def.'s Mem. 12; Pl.'s Opp'n 11–12 (listing Employee 13's offenses to include "improper

behavior" at work and "a substantial charge of abuse or neglect of the child," for which there was

an investigation by and hearing before the CFSA – OFH, but no evidence of an arrest, *see* CFSA

– OFH Order 1).

　　　Plaintiff contends that Employee 6, a youth development representative,[6] is an

appropriate comparator because DCHR cleared her criminal background check in August 2008,

despite the fact that she had an active criminal case for March 2008 charges including

impersonating a police officer, disturbing the operations of a school, and trespassing on school

grounds.  Pl.'s Opp'n 13.  Defendant insists that "there is no evidence at all that either DYRS or

---

[6] Youth development representative is a comparable position to youth correctional officer.  *See*
Pl.'s Opp'n 10 & n.13; Job Descriptions, Def.'s Mem. Ex 1, ECF No. 52-1.

DCHR made a decision regarding her alleged arrest." Def.'s Reply 6. Yet, the employee's court and personnel records corroborate Plaintiff's assertion. *See* Employee 6 Records, Pl.'s Opp'n Ex. 22, ECF No. 66-18. On August 25, 2008, DCHR issued a Notice and Report of Criminal Background Check to Employee 6, stating that she "***CLEARED*** [her] Criminal Background Check effective **July 2008**." *Id.* (emphasis in original). DCHR had before it a list of "FBI Record[s] Pertinent to the Act," on which appeared a 1994 two-count battery offense with an unknown disposition, a 2002 second-degree assault offense with an unknown disposition, a 2005 second-degree assault offense that was *nolle prossed*, and a 2008 offense of "impersonate police officer," next to which was noted "n/a." *Id.* The court records show that the 2008 case was "ACTIVE." *Id.* Thus, even if it were deemed not applicable, the arrest was considered by DCHR.

Nonetheless, on the record before me, a reasonable jury could not find that Employee 6 engaged in conduct that "was comparable in seriousness to [Plaintiff's] misconduct," *see Cook v. CSX Trans. Co.*, 988 F.2d 507, 511 (4th Cir. 1993), given the status of their criminal cases at the time of DCHR's decision. To receive probation before judgment after pleading guilty, Plaintiff necessarily was found guilty of the underlying conduct beyond a reasonable doubt. *See* Md. Code Ann., Crim. Proc. § 6-220(b)(1) ("When a defendant pleads guilty or nolo contendere or is found guilty of a crime, a court may stay the entering of judgment, defer further proceedings, and place the defendant on probation subject to reasonable conditions if: (i) the court finds that the best interests of the defendant and the public welfare would be served; and (ii) the defendant gives written consent after determination of guilt or acceptance of a nolo contendere plea."); Notice of Final Decision 3. Employee 6 had no similar finding of guilt as her case still was pending. Indeed, DCHR noted the significance of the determination of Plaintiff's guilt of the

underlying conduct in its termination decision. Notice of Final Decision 3, 6 (noting that, although Plaintiff pled not guilty and received probation before judgment, "the Court made a finding that the Employee was guilty of the offense," which was a felony).

Employee 7 was removed for "an adverse action" in 2005; as part of settlement of that action, which involved reinstatement, he underwent a criminal background check in 2010, and it was discovered that he had been convicted of misdemeanor retail theft five years earlier for taking an ink cartridge from a store. DCHR Mem. re Suitability Investigation of Applicant for Reinstatement, Pl.'s Opp'n Ex. 24, ECF No. 66-19.  He also had two earlier theft charges, one for theft from a previous employer, for which he was not convicted.  *Id.* DCHR recommended his reinstatement in 2011, albeit with a nine-day suspension without pay, based on the amount of time that had passed and the fact he had no more recent charges or convictions.  *Id.* DCHR reasoned:

> [This employee]'s last arrest and conviction occurred approximately 6 years ago. The paramount issue in CYSHA suitability cases following a conviction is whether there has been a sufficient showing of rehabilitation to warrant entrusting the individual with employment in a covered position. [This] Employee [] has not reoffended since his last arrest.

*Id.*   Thus, Employee 7 is dissimilar to Plaintiff, who had no similar period following the disposition of her felony charge to demonstrate rehabilitation.  Moreover, Employee 7's retail theft conviction was for a misdemeanor, not a felony. *See id.*; 18 Pa. C.S.A. § 3929(a)(1), (b)(1).

DYRS recommended the retention of Employees 8–11 in 2006 after a background check that year revealed that they all had received probation and some had been fined or served time – Employees 8–10 for assault charges in 2004 and Employee 11 for a disorderly conduct charge in 1999 and a drug charge in 2000.  DYRS May 2, 2006 Mem. re Background Checks, Pl.'s Opp'n Ex. 25, ECF No. 66-20.  But, these events are too temporally remote to support an inference of

13

discrimination, and therefore these employees do not qualify as similarly situated.  *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 546 (4th Cir. 2003) (concluding that employee, identified by defendant as similarly situated to plaintiff to rebut inference of discrimination in defendant's failure to hire plaintiff, was not similarly situated to plaintiff where the employee "was not hired until several months after Bryant filed charges of racial discrimination"); *Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 515–16 (6th Cir. 2012) (concluding that "comparators were not similarly situated in that there is no temporal nexus to the events here" when disciplinary decisions concerning comparators were seven months to two years removed from plaintiff's termination); *Lee v. Kansas City So. Ry.*, 547 F.3d 253, 259 (5th Cir. 2009) ("Employees . . . who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated."); *Epps v. First Energy Nuclear Operating Co.*, No. 11-462, 2013 WL 1216858, at *19 (W.D. Pa. Mar. 25, 2013) (concluding that the disciplinary incident involving the comparator was "too remote in time from [plaintiff's] incident, which occurred more than *four and a half years later*, . . . to raise a reasonable inference of discrimination" (emphasis in original)); *Newton–Haskoor v. Coface N. Am.*, No. 11-3931, 2012 WL 1813102 at *5 (D.N.J. May 17, 2012) (concluding that "the nature of the parties' alleged behavior is too dissimilar and the time periods in which the behaviors occurred [approximately two years apart] are too remote to conclude the two were 'similarly situated' so as to permit the inference [of discrimination advanced by Plaintiff").  Indeed, had Employee 7, whose offense took place in 2005, not been dissimilar for the reasons previously discussed, Plaintiff's comparison to him would have failed due to remoteness, and the comparison to Employees 5 and 6, with offenses dating back to 2007 and 2008, may have failed

on this basis as well. *See Bryant*, 333 F.3d at 546; *Tibbs*, 505 F. App'x at 515–16; *Lee*, 547 F.3d at 259; *Epps*, 2013 WL 1216858, at \*19; *Newton–Haskoor*, 2012 WL 1813102 at \*5.

In sum, given the dissimilarities of each comparator discussed above, Plaintiff has not established a *prima facie* case of discrimination under Title VII or Maryland FEPA. *See Cook*, 988 F.2d at 511 (stating requirements for comparator to be similarly situated under Title VII); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (same); *Williams v. Silver Spring Volunteer Fire Dep't*, No. GJH-13-2514, ---- F. Supp. 2d ----, 2015 WL 237146, at \*16 (D. Md. Jan. 16, 2015) (same); *Jones v. Giant of Md., LLC*, No. DKC-08-304, 2010 WL 3677017, at \*8 (D. Md. Sept. 17, 2010) (same); *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 447 n.2, 459 (Md. 2011) (stating requirements for comparator to be similarly situated under Maryland FEPA). Therefore, summary judgment is appropriate on Plaintiff's claims. *See* Fed. R. Civ. P. 56(a).

## ORDER

Accordingly, it is, this 16th day of March, 2015, hereby ORDERED that Defendant's Motion for Summary Judgment, ECF No. 52, IS GRANTED.  The Clerk shall CLOSE THIS CASE.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb